```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MICHELE TORCHIA, M.D., | Civil No. 12-5607 (NLH/KMW) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| COMMUNITY HEALTH CARE, INC., a/k/a COMPLETECARE HEALTH NETWORK and GIL WALTER, | |
| Defendants. | |

**APPEARANCES**

JEFFREY P. RESNICK
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
EAST GATE CORPORATE CENTER
308 HARPER DRIVE
SUITE 200
MOORESTOWN, NJ 08057
      On behalf of plaintiff

A. MICHAEL BARKER
JEFFREY P. SARVAS
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221
      On behalf of defendants

**HILLMAN, District Judge**

     Presently before the Court is the motion of defendants, Community Health Care, Inc./CompleteCare Health Network and Gil Walter, for summary judgment on the claims of plaintiff, Michele Torchia, for employment discrimination and breach of employment contract.  For the reasons expressed below, defendants' motion

will be granted.

## BACKGROUND

Plaintiff is a board certified physician in obstetrics and gynecology.  After complications from breast cancer rendered her unable to continue in private practice, plaintiff became the Director of Women's Health at CompleteCare in 2007, having volunteered there for a year before.  In September 2009, plaintiff was promoted to Medical Director, and she began reporting to CompleteCare's CEO, Gil Walter.

Plaintiff and Walter seemed to have a fine working relationship until May 2011, when plaintiff claims that Walter began harassing her and making discriminatory remarks about her age, gender, national heritage and religion.  By September 22, 2011, after she claims that Walter could not bully her into resigning, plaintiff and Walter had a meeting to discuss staff attrition.  Plaintiff claims that Walter started acting belligerently, screaming, throwing plaintiff's papers to the floor, mimicking plaintiff in a high-pitched nasal voice, and yelled, "I am not a good person.  I am not a bad person.  I am just who I am and I can't stand the way you present yourself.  I don't think you can continue to be part of this organization." Plaintiff claims that she believed that she was fired, and she told Walter that he could have her letter of resignation so that

2

she would not be stigmatized by a termination for future employment.

Later in the day, and after speaking to co-workers about her meeting with Walter, she met with Walter again and told him that she would not be resigning.[1]  The following Monday, September 26, 2011, plaintiff met with Walter, Cherly Omhert, Director of Human Resources, and Gwendolyn Gould, the Chairperson of the CompleteCare board of directors.  Plaintiff again stated that she was not resigning.  Plaintiff alleges that Walter stated that he had agonized over his decision, but he ultimately would accept plaintiff's resignation.  Walter then gave plaintiff a release to sign, but plaintiff refused.  Plaintiff claims that she asked to speak to the Board, but that request was never honored.

During the last four months of her tenure with CompleteCare, plaintiff alleges that the following discrimination occurred:

   1. In June 2011, after eavesdropping on plaintiff's telephone

---

[1] Plaintiff was not an at-will employee.  Plaintiff and CompleteCare had entered into an employment contract that provided she could only be terminated for three reasons, none of which are applicable here.  Walter argues that he could not have fired plaintiff at that meeting because it would have been a breach of contract.  Plaintiff claims that she was constructively terminated and Walter breached the employment contract.  Plaintiff's breach of contract claim is analyzed after her discrimination claims.

3

conversation with an attorney for CompleteCare, Walter screamed at plaintiff and called her a liar, and told her not to contradict him;

2. In late August 2011, Walter told plaintiff at an executive meeting that physicians, who were all female, should not make as much money as other male employees;

3. During a meeting with co-workers, Walter mimicked plaintiff in a repeated high pitched Mickey Mouse voice;

4. During the summer of 2011, Walter offered to privately "mentor" plaintiff on numerous occasions;

5. During their morning September 22, 2011 meeting, Walter asked plaintiff why she could not be more like another younger, attractive female employee;

6. During their morning September 22, 2011 meeting, Walter threw plaintiffs work product, prepared over days of work, onto the floor and then mimicked plaintiff in a high pitched, whiny voice, rocking his head back and forth with his eyes squinted up after he and plaintiff discussed the ethics of his decision regarding not paying physician's productivity pay;

7. During their afternoon September 22, 2011 meeting, Walter accused plaintiff of seeing "the world through a judgmental prism";

8. During their afternoon September 22, 2011 meeting, Walter accused plaintiff of being an "emotional Italian woman like his fiancée"; and

9. During their afternoon September 22, 2011 meeting, Walter told plaintiff that she was a "51 year-old woman" and "unable to change."

Plaintiff contends that these comments evidence discrimination based on her age, national origin, sex, and religion, and taken together, they culminated in her constructive discharge, all in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 621, et seq., Title VII of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq.  Plaintiff also alleges that defendants breached the employment contract by forcing plaintiff to resign. Defendants have moved for summary judgment on all of plaintiff's claims.  Plaintiff has opposed defendants' motion.

## DISCUSSION

### A.   Subject matter jurisdiction

This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp.

6

v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    C.    **Analysis**

        1.    **Discrimination claims**

The NJLAD and Title VII[2] both prohibit discrimination by covered employers on the basis of race, color, religion, sex or national origin, and the ADEA prohibits discrimination based on a person's age. Typically, because "discrimination is not usually practiced openly and intent must be found by examining what was done and said in circumstances of the entire transaction," an employee may prove an employer's discriminatory

---

2 Title VII requires that a claimant file her claim with the EEOC and exhaust those administrative remedies prior to filing suit. Plaintiff complied with those procedures, and the EEOC issued her a right to sue letter on August 28, 2012.

intent through circumstantial evidence. <u>Bergen Commercial Bank v. Sisler</u>, 723 A.2d 944, 953 (N.J. 1999) (citing <u>Parker v. Dornbierer</u>, 356 A.2d 1, 3 (N.J. Super. Ct. App. Div. 1976)). When an employee presents circumstantial evidence to support her case, the burden-shifting methodology described by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) is applied. <u>Id.</u> at 954. Under this three-stage process, if an employee proves a prima facie case of discrimination, the burden shifts to the employer to show a legitimate, non-discriminatory reason for its employment decision. <u>Id.</u> at 955. The burden then shifts back to the employee to prove by a preponderance of the evidence that the legitimate non-discriminatory reason articulated by the employer was not the true reason for the employment decision, but was merely a pretext for discrimination. <u>Id.</u> (citation omitted).

Although there is no single prima facie case that applies to all employment discrimination claims, and the elements of the prima facie case vary depending upon the particular cause of action, <u>see</u> <u>Victor v. State</u>, 4 A.3d 126, 140–41 (N.J. 2010), plaintiff's discrimination claims based on her sex, national origin, religion and age apply very similar standards.[3] Thus, to

---

3 "Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim." <u>Schurr v. Resorts Int'l</u>

8

establish her discrimination claims, plaintiff must show that she (1) is a member of a protected class, (2) was qualified for the position held, (3) suffered an adverse employment action despite being qualified, and (4) under circumstances that give rise to the inference of discrimination, such as non-class members being treated more favorably, or being replaced with a younger employee or an employee of the opposite sex or religion. See, e.g., Abramson v. William Paterson College of N.J., 260 F.3d 265, 281-82 (3d Cir. 2001); Burton v. Teleflex Inc., 707 F.3d 417, 426-27 (3d Cir. 2013) (citing McDonnell Douglas, 411 U.S. at 802-03) (other citations omitted); Gerety v. Atlantic City Hilton Casino Resort, 877 A.2d 1233, 1237 (N.J. 2005).

At the summary judgment stage, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." Duffy v. Paper Magic Grp., 265 F.3d 163, 167 (3d Cir. 2001) (citation omitted). If a plaintiff fails to raise a genuine dispute of material fact as to any of the elements of the prima facie case, she has not met

---

Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999). Likewise, analysis of a claim made under ADEA generally follows a slightly modified version of the McDonnell test. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). Therefore, the analysis of plaintiff's Title VII claim of discrimination on the basis of race, age and religion applies to plaintiff's identical claims under NJLAD and ADEA.

her initial burden, and summary judgment is properly granted for the defendant.  Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996).

In this case, defendants argue that plaintiff cannot establish a prima facie case for any of the bases for her claimed discrimination.  The Court agrees.  Accepting as true for the purposes of her discrimination claims that plaintiff was effectively terminated, that she was qualified for the position, and that her sex, national origin, religion and age all provide her special rights as a protected class, plaintiff has not submitted sufficient proof to infer that discrimination was the cause of her termination.[4]

Both sides do not dispute that from September 2009, when plaintiff was promoted to Medical Director and began reporting to Walter, through April 2011, Walter gave plaintiff performance evaluations that were positive overall.  For those two years, and even up to May 2011, plaintiff makes no claims regarding Walter's alleged discriminatory animus to women, people of Italian heritage, people of Christian faith, or people over 40 years old.  The record contains no evidence that shows that male, non-Italian, non-Christian, under-forty employees at

---

[4] The Court will refer to plaintiff's departure from CompleteCare as a "termination" in the analysis of her discrimination claims.

CompleteCare were treated any differently from plaintiff. Indeed, the record shows that as of November 2011, ninety percent (218 of the 242) full-time employees were female, and women were the majority in every job class, including the professional group and manager group. Moreover, the person who replaced plaintiff was a female over the age of forty. With regard to national origin and religion, in Cumberland County, the community where CompleteCare is located and obtains many of its employees, Italian was the most predominantly reported ancestry heritage, and Christian-based religions encompassed ninety percent of the population. (See Def. Ex. 27, Docket No. 35-30.)

The question of why Walter started to allegedly harass and bully plaintiff after May 2011 for her gender, national origin, religion, and age, when none of those attributes apparently triggered his harassment for the two years before, is explained by plaintiff. Plaintiff states that her alleged harassment began once she obtained her Master's in Public Health in May 2011, and Walter felt threatened that plaintiff could succeed Walter in his position. Plaintiff states that Walter bullied plaintiff based on everything he was not.

This change in circumstances evidences more of a professional power struggle between plaintiff and Walter than

11

discrimination due to plaintiff's personal characteristics. This is especially true considering that during the two years she successfully worked under Walter, she was still an Italian, Christian, female over forty years of age. Thus, plaintiff's own assessment of Walter's animus derives from professional insecurity, rather than bias against her protected classes.

Of course, feeling that his job was being threatened does not condone Walter's alleged comments and conduct. An employer cannot harass an employee based on her protected characteristics, regardless of the motivation. However, even accepting as true that Walter said and acted as plaintiff claims, plaintiff cannot link those actions and comments to a discriminatory-fueled termination.

With regard to her claims for discrimination based on her religion and national origin, plaintiff points to two alleged comments by Walter, both occurring in the afternoon meeting on September 22, 2011, after she was terminated: Walter accused plaintiff of seeing "the world through a judgmental prism", and Walter accused plaintiff of being an "emotional Italian woman like his fiancée." These two comments do not sufficiently demonstrate that plaintiff was fired because she is of Italian heritage, or is of Christian faith (accepting as true that "judgmental prism" is a reference to Christianity).

12

Significantly, plaintiff has not provided any evidence that people of other national origins and faiths are treated more favorably by Walter, or at CompleteCare as a whole, which is an essential element of her prima facie case.

Similarly, with regard to Walter's seven other comments relating to plaintiff's gender and age, accepting them as true, his comments and conduct may be deemed unprofessional, but they, along with the other evidence in the record, do not demonstrate a discriminatory animus towards women or women over the age of forty. Ninety percent of employees at CompleteCare are women, and the majority of professional and managerial employees are female. Plaintiff's position was filled with a woman over the age of forty. These facts defeat plaintiff's prima facie case for age and sex discrimination.

Perhaps recognizing the weaknesses in her discrimination claims when considered individually, plaintiff urges the Court to consider Walter's conduct and comments as a whole, which demonstrates how he discriminated against plaintiff because of her four protected classes collectively. Presumably, plaintiff does not intend that in order to determine the fourth element of her prima facie case, the Court would need to compare how CompleteCare treats under forty, non-Christian, non-Italian male employees with plaintiff. In order to demonstrate

13

discriminatory intent, however, Plaintiff must still show how those protected statuses individually, or in any combination, are treated compared with other non-protected class employees in the situation plaintiff faced.  Plaintiff may have shown Walter's animus toward her as his employee, but she has not provided sufficient proof to show his animus toward her because of her protected statuses.  Accordingly, plaintiff cannot establish a prima facie case for any of her discrimination claims, and defendants are entitled to summary judgment.[5]

---

[5] Even if, however, the Court found that plaintiff could establish her prima facie case for her discrimination claims, she cannot rebut defendants' legitimate reasons for her termination (with the Court also accepting a true her constructive termination allegation).  Ultimately, Walter chose not to allow plaintiff to return to her position, and in the September 26, 2011 letter to plaintiff, Walter expressed that he felt that he and plaintiff had "persistent strong differences in their management philosophies," and Walter had "frequent dissatisfaction with plaintiff's management style."  Plaintiff argues that these reasons are a pretext, as demonstrated by her previously glowing performance evaluations.  A review of those performance evaluations, however, shows that in addition to the many areas of positive praise, Walter articulated areas where plaintiff needed improvement, and those areas are consistent with his statements in his September 26, 2011 letter.  Accordingly, because plaintiff cannot "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons," Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994), she has not demonstrated that the reason for her termination was based on her sex, national origin, religion or age.  Relatedly, because plaintiff's discrimination claims are not

### 2. Breach of contract claim

Even though the Court accepted as true that plaintiff was terminated from her position at CompleteCare in the analysis of plaintiff's discrimination claims, the dispute over whether plaintiff resigned or was terminated must be considered to resolve plaintiff's breach of contract claim.

Plaintiff claims that defendants breached her employment contract when she was terminated. Plaintiff's employment contract provided that the agreement could be terminated by mutual agreement at any time, or that CompleteCare could terminate the agreement "for cause" for three reasons: (1) the death of the employee or a mental or physical inability of the employee to perform the responsibilities of the agreement; (2) it is determined that plaintiff violated the Medicare or Medicaid laws; or (3) the employee was found guilty of a crime involving moral turpitude. (Def. Ex. 2, Docket No. 35-5 at 4.)

Because it is undisputed that plaintiff did not meet any of these "for cause" reasons for termination, plaintiff argues that defendants breached her employment agreement when at the September 22, 2011 meeting Walter terminated her employment,

---

maintainable, the Court does not need to determine the issue of whether the sole perpetrator of discrimination can aid and abet himself so that he is exposed to personal liability.

15

stating "I don't think you can continue to be part of this organization."  Alternatively, plaintiff contends that Walter's harassment forced her to resign, resulting in a constructive termination in breach of the employment contract.  In contrast, defendants maintain that plaintiff resigned, and the fact that Walter did not accept plaintiff's request to rescind her resignation does not amount to a breach of the employment agreement.

To establish a breach of an employment contract claim, a party must show that (1) a valid contract exists between the plaintiff and the defendant, (2) the defendant breached the contract, and (3) the plaintiff incurred damages as result of the breach.  Luscko v. Southern Container Corp., 408 F. App'x 631, 636 (3d Cir. 2010) (citing Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing Coyle v. Englander's, 199 N.J. Super. 212, 488 A.2d 1083, 1088 (1985)).  A contract is considered breached "where one party to a contract, by prevention or hindrance makes it impossible for the other to carry out the terms [of the contract]."  Id. (citing Wolf v. Marlton Corp., 57 N.J. Super. 278, 154 A.2d 625, 628 (1959) (citation omitted).

It appears that plaintiff's alternative theories regarding her discharge from CompleteCare seek to establish that Walter

16

made it impossible for plaintiff to continue at her job, and as a result, he breached the contract.  Even though plaintiff does not advance a separate count for constructive termination under the NJLAD, the standard for analyzing a constructive discharge claim under the NJLAD is instructive because plaintiff is effectively arguing that claim to support her breach of contract claim.

To prove a constructive discharge claim under the NJLAD, a plaintiff is required to show "not merely severe or pervasive conduct, but conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." Anastasia v. Cushman Wakefield, 455 Fed. Appx. 236, 240-241 (3d Cir. 2011) (citing Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 628 (N.J. 2002)).  This is an objective inquiry which requires the Court to determine whether a plaintiff's working conditions became so intolerable - through a showing of "outrageous, coercive and unconscionable" conduct - that a reasonable person in the employee's position would have felt compelled to resign.  See Vanartsdalen, 2007 WL 2219447, at *7 (citing Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)); see also Anastasia, 455 F. App'x at 241 ("The plaintiff must show "outrageous, coercive and unconscionable" conduct that is more egregious than what is required to

17

establish a hostile work environment claim."). "[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993) (citations omitted).

The Court's analysis of plaintiff's discrimination claims informs the analysis of plaintiff's breach of contract claim. Even though Walter's alleged conduct in the last four months of plaintiff's employment felt egregious to plaintiff, Walter's actions do not amount to discrimination, and they certainly do not rise to the level of "outrageous, coercive and unconscionable" so that a reasonable person would have felt compelled to resign. Thus, in the context of a breach of contract claim, Walter's alleged conduct cannot be considered to have made it impossible for plaintiff to continue working under Walter at CompleteCare so that he effectively breached the employment agreement. Defendants are entitled to summary judgment on this claim as well.

## CONCLUSION

For the reasons expressed above, defendants' motion for summary judgment on all of plaintiff's claims shall be granted. An appropriate Order will be entered.

Date:  September 30, 2014                s/ Noel L. Hillman
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.